STATE of Wisconsin, Plaintiff-Respondent,

v.

Samuel TERRY, Defendant-Appellant.†

Court of Appeals

*No.  99–2150–CR.  Submitted on briefs August 1,
2000.—Decided October 24, 2000.*

## 2000 WI App 250

(Also reported in 620 N.W.2d 217.)

†Petition to review denied.

520

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard D. Martin*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Samuel Terry appeals from the judgment of conviction, entered following a jury trial, for possession of a controlled substance with intent to deliver, as a repeat offender, contrary to WIS. STAT. §§ 961.16(2)(b)1, 961.41(1m)(cm)2, and 961.48.[1] He also is appealing the order denying his postconviction motion. Terry argues that, under the doctrine of issue preclusion, the State was precluded from criminally prosecuting him for possession of cocaine with intent to deliver because the Administrative Law Judge (ALJ), at his probation and parole revocation proceeding, determined that there was insufficient

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

proof that Terry possessed cocaine, even under the relaxed preponderance of the evidence standard. We conclude that, while administrative agency decisions are given preclusive effect between the same parties in some instances, the doctrine of issue preclusion should not be applied to findings made in parole and probation revocation proceedings for three reasons: (1) the executive branch oversees revocation hearings through the Department of Corrections (DOC), and the district attorney is not a party. Moreover, DOC is generally disinclined to seek review of the ALJ's decision in a parole and probation revocation proceeding; (2) parole and probation revocation proceedings in this state and criminal trials have critical differences in procedure and function which militate against applying issue preclusion to revocation proceedings; and (3) public policy considerations weigh against applying issue preclusion to revocation proceedings. Thus, the State was not precluded from subsequently prosecuting Terry for possessing cocaine with the intent to deliver and we affirm.

## I. BACKGROUND.

¶ 2. Terry was charged with one count of possession with intent to deliver cocaine (more than five grams but not more than 15 grams), as a repeat offender. The charges stem from an incident following a traffic stop. Milwaukee Police Officer Peter Reichert stopped Terry for running a red light. During the traffic stop, Officer Reichert was suddenly called away to assist in another matter. Before leaving, Officer Reichert directed Terry and his passenger to stay in the car while he went to assist other officers. Officer Reichert returned approximately two to four minutes later.

¶ 3.   Lawrence Kress, who lived approximately one block from the site of the traffic stop, watched Terry from his kitchen window after the officer pulled away. Kress reported to Officer Reichert upon his return, that he saw a man get out of the car, appear to drop something in the bushes near the car, and then get back into the car on the driver's side. Based on the information provided by Kress, the police located fifty-five "corner cuts" of crack cocaine in the bushes near Terry's car. Terry admitted that he was driving without a valid driver's license, but he denied possessing the drugs. Nevertheless, Terry was arrested on the strength of Kress's observations and a search yielded a cell phone and a pager.

¶ 4.   Terry was charged with one count of possession with intent to deliver cocaine as a repeat offender. He pled not guilty and his trial was scheduled for August 5, 1998. Prior to trial, DOC instituted revocation proceedings against Terry because he was on both parole and probation.[2] DOC alleged that Terry violated his probation and parole rules by operating an automobile without a valid license, possessing drug paraphernalia in the form of a pager and a cell phone, and possessing cocaine.

¶ 5.   Terry's final revocation hearing was held in July 1998 before an ALJ. At the proceedings, the State was represented by a probation and parole agent. Both the arresting officer and Kress testified. The Officer described the traffic stop, explained that he had to

[2] The record indicates that on December 20, 1995, Terry was sentenced to forty-four months in prison for the 1995 possession conviction. Then on February 5, 1998, Terry was convicted of disorderly conduct in a separate case, and sentenced to a consecutive ninety-day jail term that was stayed in favor of probation.

leave the scene temporarily, and that when he returned to the scene, Kress informed him that the driver had gotten out of the car and dropped something in some nearby bushes. The Officer indicated that he then discovered the drugs. He also stated that, although there was a passenger in the car who could have hidden the drugs, he arrested Terry because Kress insisted that the person who got out of the car and hid the drugs got back into the car on the driver's side. Kress also testified. He confirmed that he saw a man get out of the car, drop something in the bushes and then get back into the car on the driver's side. He stated he was approximately one-half block away when he witnessed these events.

¶ 6.   Coincidentally, the ALJ released its decision on the day Terry's jury trial began. In its decision, the ALJ found that the State had proven three of the four alleged violations: driving without a valid license, possession of a pager and possession of a cell phone, but the ALJ found that the State failed to prove that Terry possessed cocaine by a preponderance of the evidence and, therefore, rejected the charge as a basis for revoking Terry's parole. Nevertheless, the ALJ ordered Terry's parole revoked on the basis of the other three violations.

¶ 7.   After a two-day jury trial in which Terry's defense was that the evidence was insufficient to convict him, he was found guilty. Terry was sentenced to a ten-year prison term, to run consecutive to his prior sentences. Terry then filed a postconviction motion seeking to have his conviction vacated and the charges dismissed with prejudice. In his postconviction motion, Terry argued for the first time that the ALJ's prior ruling, finding insufficient evidence to support the possession charge during the revocation proceedings,

precluded the State from subsequently trying him on the identical facts. The trial court denied Terry's post-conviction motion.

## II. ANALYSIS.

¶ 8.   Terry argues that because the State failed to prove the possession charge by a preponderance of the evidence during the revocation proceedings, it was precluded from subsequently relitigating the issue by charging him with a crime based on the identical facts. Terry submits that under the doctrine of issue preclusion, the ALJ's ruling that the State failed to prove the possession charge by a preponderance of the evidence, should have foreclosed a criminal charge because conviction of a crime requires a higher burden of proof—guilt beyond a reasonable doubt. Further, Terry contends that the five factors set forth in *State v. Kasian*, 207 Wis. 2d 611, 615–616, 558 N.W.2d 687 (Ct. App. 1996), "bear[ing] upon the question of whether [issue preclusion] applies," support his position.[3] Finally, Terry asserts that "[c]oncepts of fundamental fairness and due process weigh in favor of according the revocation proceedings preclusive effect in subsequent criminal proceedings." We disagree.

¶ 9.   "The application of issue preclusion doctrines to a given set of facts presents a question of law which this court reviews without deference to the trial court's ruling." *Id.*

---

[3] "Older cases refer to 'issue preclusion' as 'collateral estoppel' but the trend is to use the term 'issue preclusion.' " *State v. Wille*, 185 Wis. 2d 673, 680, 518 N.W.2d 325 (Ct. App. 1994).

¶ 10.  In *Ashe v. Swenson*, 397 U.S. 436 (1970), the Supreme Court observed that the concept of issue preclusion, first developed in civil litigation, has been a rule of federal criminal law since 1916. *See id.* at 443 (citing *United States v. Oppenheimer*, 242 U.S. 85 (1916)). The Court explained that issue preclusion "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* Although Wisconsin courts have accepted the concept of issue preclusion, they have rejected a formalistic application of the doctrine of issue preclusion in favor of an equity-based approach. In *Kasian,* this court identified five criteria in determining whether issue preclusion applies:

> (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issues; (4) have the burdens of persuasion shifted such that the parties seeking preclusion had a lower burden of persuasion in the first trial than in the second; and (5) are matters of public policy and individual circumstances involved that would render the application of [issue preclusion] to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Id.* at 615–16; *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 28 (1980). Both Terry and the State argue that the application of these five criteria support their

respective positions. In determining that issue preclusion does not apply in the instant action, we find three of the five criteria dispositive. Specifically, we are satisfied that: (1) the district attorney was not a party to the proceedings and could not have obtained review of the ALJ's decision even if the district attorney had so desired. Moreover, DOC normally does not appeal the ALJ's decisions in parole and probation revocation proceedings; (2) there are significant differences between revocation proceedings and criminal trials which warrant relitigation of the issue; and (3) under the circumstances present here, public policy considerations weigh against the application of issue preclusion.

¶ 11. First, we note that because the ALJ ultimately decided to revoke Terry's parole on three counts, DOC had no valid interest in pursuing an appeal of the decision on the first count. DOC was only interested in revoking Terry's parole; it was not interested in proving Terry guilty of a crime. Once the ALJ revoked Terry's parole based on three of the four alleged violations, DOC had obtained the desired result and had no further reason to appeal the decision. Moreover, because the ALJ's decision was not adverse to DOC, it is questionable whether DOC could have appealed the decision had it so desired. Generally, a party that prevails on the ultimate issue may not seek further review of the underlying rationale for the decision. *See State v. Castillo*, 213 Wis. 2d 488, 491–92, 570 N.W.2d 44 (1997); *Neely v. State*, 89 Wis. 2d 755, 758, 279 N.W.2d 255 (1979). Therefore, because DOC ultimately prevailed in its efforts to revoke Terry's parole, it was arguably precluded from seeking further review of the decision based on the ALJ's rejection of one of the four alleged violations.

¶ 12. Additionally, we conclude that the significant differences between revocation proceedings and criminal trials warrant relitigation of the issue. In *State ex rel. Flowers v. DHSS*, 81 Wis. 2d 376, 260 N.W.2d 727 (1978), our supreme court determined that "[t]he ends of parole revocation are . . . distinct from the punitive functions of the criminal law." *Id.* at 385 (holding that initiating parole revocation proceedings after an acquittal in a criminal trial does not implicate double jeopardy concerns). Revocation proceedings, unlike criminal trials, are not concerned with retribution. *See id.* A revocation determination requires a balancing of the safety of the general public with the rehabilitative needs of the parolee. *See id.* In describing the differences between revocation proceedings and criminal trials, the court stated:

> Thus revocation does not require a judicial hearing; the rules of evidence need not be strictly adhered to; and the privilege against self-incrimination does not prevent consideration of inculpatory statements or a parolee's refusal to answer questions. These distinctions reflect substantial differences between the interests involved in parole revocation and those in a criminal prosecution.

*Id.* at 384 (citations omitted). In *Flowers*, the court noted that for issue preclusion to apply, "[t]he second proceeding 'must involve . . . the same bundle of legal principles that contributed to the rendering of the first judgment.' " *Id.* at 387 (citation omitted). Finally, the court held that the "bundle of legal principles" was not the same in a revocation proceeding and a criminal trial because the burdens of proof differ.[4]

---

[4] However, as both parties correctly argue, the court in *Flowers* was addressing the situation where the revocation pro-

¶ 13. The State relies, in part, on *State v. Spanbauer*, 108 Wis. 2d 548, 322 N.W.2d 511 (Ct. App. 1982), to support its position that the differences between revocation hearings and criminal trials warrant relitigation of the issue.[5] However, Terry argues

ceedings followed an acquittal of the underlying criminal charges. Nevertheless, the order in which the proceedings occur is irrelevant. In *State v. Spanbauer*, 108 Wis. 2d 548, 551 n.1, 322 N.W.2d 511 (Ct. App. 1982), we indicated that, "Spanbauer seeks to distinguish [*State ex rel. Flowers v. DHSS*, 81 Wis. 2d 376, 260 N.W.2d 727 (1978)] on grounds that the revocation hearing in *Flowers* occurred after the criminal proceedings. The order of the proceedings is irrelevant because we hold that the proceedings are different *in kind*."

[5] Specifically, the State cites *Spanbauer* for the proposition that revocation proceedings do not have preclusive effect on criminal trials because they are not criminal adjudications and do not end in final judgments. We recognize that in *Spanbauer* we held that, "[issue preclusion] precludes relitigation of an issue of ultimate fact once that fact has been determined by a valid and final judgment." *Id*. at 550–51. Further, we note that the RESTATEMENT (SECOND) OF JUDGMENTS § 27 refers to judgments and indicates that the issue to be precluded must have been "actually litigated," as well as be "essential to the judgment." *See also* WIS. STAT. § 967.02(8) (defining a "judgment" as an "adjudication by the court that the defendant is guilty or not guilty"). From these authorities, the State argues that because a decision by an ALJ in a revocation proceeding is not a criminal adjudication and does not end in a judgment, issue preclusion does not bar the relitigation of an issue decided in revocation proceedings. However, we note that we give preclusive effect to other administrative decisions that do not result in judgments.

For example, in *Hlavinka v. Blunt, Ellis & Loewi*, 174 Wis. 2d 381, 497 N.W.2d 756 (Ct. App. 1993), we observed that, "[a]bsent controlling legislation to the contrary, determinations by administrative agencies acting in a judicial capacity are generally given preclusive effect in subsequent actions between the

that *Spanbauer* is distinguishable. We disagree with Terry. In *Spanbauer,* this court held that the ALJ's decision not to revoke parole did not bar a subsequent criminal prosecution based on the same allegations. In deciding against revoking Spanbauer's parole, the revocation decision stated that "[t]he determination not to revoke Spanbauer's parole was based upon a weighing of the interests of society and consideration of Spanbauer's rehabilitation." *Spanbauer,* 108 Wis. 2d at 552. Terry argues that *Spanbauer* is inapposite because the fact finder in *Spanbauer* did not make factual findings adverse to the State, as it did here when the ALJ specifically found that the State had

same parties." *Id.* at 398; *cf. Acharya v. AFSCME, Council 24, WSEU,* 146 Wis. 2d 693, 696, 432 N.W.2d 140 (Ct. App. 1988) (Estoppel by record "is closely related to res judicata, except that it is the former record, rather than the judgment itself, that bars the second proceeding."). Further, we set forth the four conditions that must be met before an administrative agency determination is given preclusive effect:

1. the administrative proceeding must have been properly before the agency;

2. the administrative agency must have been acting in a judicial capacity;

3. the issues for which preclusion is sought must have been actually determined by the administrative agency; and

4. the parties must have had an adequate opportunity to litigate those issues before the administrative agency.

*Hlavinka,* 174 Wis. 2d at 399. Consequently, we recognize that we have given preclusive effect to determinations that cannot properly be called judgments. Thus, we do not base our decision on the State's assertion that a revocation proceeding, unlike a criminal trial, does not result in a judgment. Rather, we ground our decision on the numerous remaining differences between a revocation proceeding and a criminal trial, which indicate that a revocation proceeding should not be given preclusive effect.

failed to prove a crucial element of the crime of possession of cocaine. Terry reads *Spanbauer* too narrowly. We are satisfied that *Spanbauer* supports our conclusion that a prior factual finding in a revocation hearing, that is contrary to the State's position in a criminal prosecution, does not preclude the criminal prosecution:

> Under the Wisconsin Constitution and the Wisconsin Statutes, the circuit courts of this state are given exclusive jurisdiction over all criminal matters. The legislature did not intend to delegate to a non-elected hearing examiner in parole revocation proceedings the authority to determine the guilt or innocence of a defendant. The decision not to revoke Spanbauer's parole is not a binding adjudication of the merits of the criminal charge against him.

*Id.* at 552 (citation omitted). Thus, contrary to Terry's assertion, *Spanbauer* is not inapposite. Further, as noted, *Spanbauer* instructs that the State Constitution and the legislature have mandated that jurisdiction over criminal matters lies with the trial court, and thus, a revocation proceeding is not a "binding adjudication of the merits" of the charge.

¶ 14.   Finally, we are satisfied that public policy considerations warrant relitigation. Under our revocation scheme, the ultimate decision to revoke probation or parole rests with the executive branch of government, specifically DOC, and not the judiciary. *See State v. Horn*, 226 Wis. 2d 637, 650–53, 594 N.W.2d 772 (1999). During a revocation proceeding, the State is not represented by the district attorney, but by a non-lawyer DOC representative. Therefore, if we were to conclude that an ALJ's decision not to revoke probation or parole would preclude a subsequent prosecution by the district attorney, in all likelihood, district attorneys

531

would be forced to intervene in all revocation proceedings to preserve the State's ability to prosecute the defendant. We agree with the State's position that this result would disturb the current criminal procedure in operation in this state and redirect valuable resources away from criminal prosecutions. Also, such a situation would force the revocation proceedings to become the main focus of the litigation turning revocation proceedings into mini-trials.[6] Public policy and common sense dictate that this court should not countenance such a result.

¶ 15.  For the stated reasons, we conclude that the State was not precluded from prosecuting Terry following an adverse decision in the revocation proceedings. Therefore, we affirm both the trial court's order denying Terry's postconviction motion and his judgment of conviction.

*By the Court.*—Judgment and order affirmed.

---

[6] To support this assertion, the State cites *State v. Higa*, 897 P.2d 928 (Haw. 1995), in which the defendant argued that his conviction for driving under the influence should be reversed because the administrative license revocation proceedings barred a subsequent criminal prosecution. The court in that case applied a similar rationale, concluding that the administrative proceedings did not bar subsequent criminal prosecution "because the state had not had a full and fair opportunity to litigate the issue as it would have in a criminal proceeding." *Id.* at 936. We find this analysis instructive.