### State of Vermont v. Kevin J. Brunet

[806 A.2d 1007]

No. 00-121

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed May 10, 2002
Motion for Reargument Denied July 26, 2002

*William H. Sorrell*, Attorney General, and *John Treadwell*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Robert Appel*, Defender General, and *Henry Hinton*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Amestoy, C.J.** The question presented is whether collateral estoppel bars a criminal prosecution based on factual allegations decided adversely to the State in an earlier probation revocation proceeding. We hold that it does not. Accordingly, we affirm the judgment of conviction.

The material facts are undisputed. In November 1998, defendant was convicted of misdemeanor domestic assault, and sentenced to three to six months. The sentence was suspended, and defendant was placed on probation with the standard conditions of probation, as well as · several special conditions, including requirements that he not contact the victim of the assault, and that he abide by any pending relief from abuse order.

On January 5, 1999, defendant was charged with a violation of probation and two new offenses, second degree aggravated domestic assault and violation of an abuse-prevention order, all arising out of a single incident. Following a bail review hearing on January 12, the court ordered that defendant be held without bail on the pending violation of probation. On January 26, the court held a probation violation hearing. The State alleged that defendant had violated the conditions that he not engage in "threatening, violent, or assaultive behavior," not have any contact with the victim, and abide by any pending relief from abuse order. In support of the allegations, the State called two witnesses. Bret Ward, a bartender/bouncer at Alley Cats, a Burlington bar, testified about an incident that had occurred during the late evening of December 23 or early morning of the 24th. He recalled observing the victim and another woman approach the bar, and moments later saw defendant strike the victim several times and kick her. Defendant's probation officer testified that defendant had called her on December 28 to report that the victim had "attacked" him.

Defendant called two witnesses. His current girlfriend testified that on the night in question, she and her two young children and defendant had parked across the street from Alley Cats to visit a friend of defendant who lived above the bar. She recalled that as defendant approached the bar, the victim came up behind him, pulled on his jacket, spun him around, blocked his path, and struck him several times. Defendant, in response, picked her up and put her on the ground in order to subdue her. Defendant also testified, essentially corroborating his girlfriend's account of the incident. He did not believe that Ward, the bartender, could have observed the altercation.

At the conclusion of the hearing, the court issued findings from the bench. The court found that defendant's meeting with the victim was accidental, that the victim initiated the altercation, and that defendant put her on the ground solely to subdue her. The court thus found that the physical contact between defendant and the victim "was the result of the Defendant trying to either protect himself or to extricate himself from the situation." Accordingly, the court ruled that there was no probation violation.

Defendant later moved to dismiss the criminal charges on several grounds, including collateral estoppel. The trial court denied the motion in a written decision, concluding that the State had not had a "full and fair opportunity to litigate the issues" in the revocation proceeding, and therefore was not collaterally estopped from

proceeding with the criminal prosecution. The matter proceeded to trial, which resulted in a hung jury. At the retrial, the State called nine witnesses, including Ward (the bartender who had testified in the revocation proceeding), an acquaintance of defendant who stated that defendant was looking for the victim as he approached the bar on the evening in question, the investigating officers who described the victim's condition after the incident, and the victim herself, who testified that defendant grabbed her from behind, shoved her to the ground, jumped on her and hit her. As in the earlier revocation proceeding, defendant called his girlfriend, and testified on his own behalf. The jury returned a verdict of guilty on the charge of felony domestic assault, and defendant was subsequently sentenced to two to five years.

On appeal, defendant renews his claim that collateral estoppel barred the criminal prosecution for domestic assault because of the adverse finding against the State in the earlier probation revocation proceeding. Although we have not heretofore addressed this precise issue, our analysis is necessarily informed by several well-settled principles and precedents. The doctrine of collateral estoppel, or issue preclusion, will bar the relitigation of an earlier decided issue where:

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

*Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990); see also *State v. Dann*, 167 Vt. 119, 127-28, 702 A.2d 105, 110-11 (1997) (applying *Trepanier* elements in criminal case); *State v. Stearns*, 159 Vt. 266, 268, 617 A.2d 140, 141 (1992) (considering whether "cross-over" estoppel, i.e., principle that issue decided in civil case is determinative in later criminal case, bars DUI prosecution following judgment for defendant in civil suspension proceeding).

The trial court here found, and the State implicitly concedes, that the first two *Trepanier* elements were satisfied. The parties were identical — both the revocation proceeding and the criminal prosecution were brought by the State of Vermont against defendant — and there was a final judgment on the merits in the revocation proceeding. We may assume, as well, that the factual finding that defendant had not engaged in "assaultive" behavior and that any

physical contact with the victim was purely inadvertent and defensive would — if conclusive — preclude the charge of domestic assault predicated on the same facts. See *Lucido v. Superior Court*, 795 P.2d 1223, 1225-26 (Cal. 1990) ("identical issue" requirement addresses whether "identical factual allegations" are at stake, not whether ultimate issues or dispositions are same).

The question thus resolves to whether the State had a "full and fair opportunity" to litigate the issue in the revocation proceeding, and whether application of the doctrine in these circumstances is fair, i.e., would "serve the interests of justice." *Dann*, 167 Vt. at 127, 702 A.2d at 110. In considering whether these two elements are satisfied, the court "must look at the circumstances of each case." *Id.* Factors to consider are the type of issue preclusion (offensive or defensive), the forum, the incentive to litigate, the foreseeability of future litigation, the legal standards and burdens employed in each action, the procedural opportunities available in each forum, and the possibility of inconsistent determinations of the same issue in separate cases. *Id.*; see also *Trepanier*, 155 Vt. at 265, 583 A.2d at 587; *Stearns*, 159 Vt. at 271-72, 617 A.2d at 142-43.

We are aided in this evaluation by other courts that have considered the identical issue. Most have concluded that probation revocation hearings are so fundamentally different from criminal trials in their purpose and procedures that it would be unfair to apply collateral estoppel in these circumstances. See *United States v. Miller*, 797 F.2d 336, 341-42 (6th Cir. 1986); *Lucido*, 795 P.2d at 1226-32; *State v. McDowell*, 699 A.2d 987, 990-91 (Conn. 1997); *Green v. State*, 463 So. 2d 1139, 1139 (Fla. 1985); *State v. Jones*, 397 S.E.2d 209, 210 (Ga. Ct. App. 1990); *Krochta v. Commonwealth*, 711 N.E.2d 142, 145-48 (Mass. 1999); *State v. Reed*, 686 A.2d 1067, 1069 (Me. 1996); *People v. Johnson*, 477 N.W.2d 426, 428-29 (Mich. Ct. App. 1991); *People v. Fagan*, 489 N.E.2d 222, 222 (N.Y. 1985); *State v. Dupard*, 609 P.2d 961, 965 (Wash. 1980); *State v. Terry*, 620 N.W.2d 217, 219-23 (Wis. Ct. App. 2000); see generally Annotation, *Determination that State Failed to Prove Charges Relied Upon for Revocation of Probation as Barring Subsequent Criminal Action Based on Same Underlying Charges*, 2 A.L.R.5th 262 (1992). As explained below, we find the reasoning of these decisions to be persuasive.

In Vermont, as in the federal courts and many other states, the rules of evidence and procedure applicable in criminal trials are inapplicable in probation revocation proceedings. See V.R.E. 1101(b)(3); *State v. Austin*, 165 Vt. 389, 395, 685 A.2d 1076, 1080 (1996); *Miller*, 797 F.2d at

341; *Reed*, 686 A.2d at 1069 (Maine Rules of Evidence and other procedures applicable in criminal trial do not apply to revocation proceeding); *Johnson*, 477 N.W.2d at 428 (noting that in Michigan probation violation hearings are not subject to rules of evidence or pleading applicable in criminal trials). Moreover, the State typically bears a lower burden of proof to establish a probation violation — in Vermont the standard is only a preponderance of the evidence — as compared to proof beyond a reasonable doubt in criminal prosecutions. See *Austin*, 165 Vt. at 398, 685 A.2d at 1082; *State v. Bushey*, 149 Vt. 378, 382, 543 A.2d 1327, 1329 (1988).

The relaxed procedural rules and evidentiary burden applicable in revocation proceedings reflect their distinct purpose. As we have explained, "The purpose of a revocation hearing is not to determine defendant's culpability, but rather to decide 'whether the alternatives to incarceration which have been made available to a defendant remain viable for him.'" *State v. Lockwood*, 160 Vt. 547, 552, 632 A.2d 655, 659 (1993) (quoting *People ex rel. Gallagher v. District Court*, 591 P.2d 1015, 1017 (Colo. 1978) (en banc)); see also *Terry*, 620 N.W.2d at 221 (noting that substantial procedural differences between revocation proceeding and criminal trial "'reflect substantial differences between the interests involved in parole revocation and those in a criminal prosecution'") (quoting *State ex rel. Flowers v. DHSS*, 260 N.W.2d 727, 732 (Wis. 1978)).

The goal of a revocation hearing is not to decide guilt or innocence, but to determine whether the defendant remains a good risk for probation. See *Lucido*, 795 P.2d at 1230 ("The fundamental role and responsibility of the hearing judge in a revocation proceeding is not to determine whether the probationer is guilty or innocent of a crime, but whether a violation of the terms of probation has occurred and, if so, whether it would be appropriate to allow the probationer to continue to retain his conditional liberty."). Any sentence imposed as a result of revocation is not premised on the new criminal charges, but derives exclusively from the original sentence on the earlier offense. See *State v. Therrien*, 140 Vt. 625, 627, 442 A.2d 1299, 1301 (1982) (if violation is established, court may revoke probation and impose original sentence under 28 V.S.A. § 304); *Lucido*, 795 P.2d at 1230 ("A revocation hearing arises as a continuing consequence of the probationer's original conviction; any sanction imposed at the hearing follows from that crime, not from the substance of new criminal allegations against the probationer."); *McDowell*, 699 A.2d at 989 ("The purpose of a revocation hearing is to determine whether the defendant is a good

risk for continued probation and not to punish him for a new criminal offense."). Thus, it is universally acknowledged that a revocation proceeding is not essentially "criminal" in nature, and that double jeopardy does not attach at a revocation hearing to bar a trial of the new criminal charges. See *Miller*, 797 F.2d at 338-41; *Lucido*, 795 P.2d at 1230; *McDowell*, 699 A.2d at 990; *State v. Daniels*, 780 So. 2d 148, 149 (Fla. Dist. Ct. App. 2000); *Krochta*, 711 N.E.2d at 144-45.

The filing of new criminal charges against a probationer may signal that "the rehabilitative purposes of probation have failed and defendant is a threat to society." *Lockwood*, 160 Vt. at 552, 632 A.2d at 659. Accordingly, revocation hearings are frequently held as expeditiously as possible, and the State often lacks the preparation that precedes a criminal trial. Indeed, in some cases an ongoing criminal investigation may adduce additional evidence after the revocation proceeding has been completed, but prior to the commencement of trial. See *McDowell*, 699 A.2d at 990 ("[I]f the state proceeds with a revocation proceeding before its criminal investigation is complete, evidence may be acquired after the revocation proceeding and before the criminal trial."); *Johnson*, 477 N.W.2d at 428-29 ("Because of the limited nature and scope of a probation violation hearing, as a practical matter the prosecutor may not present all the evidence bearing on the commission of the alleged offense."); *Reed*, 686 A.2d at 1069 (probation revocation hearings are held in "informal manner" to allow court "to determine expeditiously whether continuing probation remains an effective vehicle in accomplishing the probationer's rehabilitation").

The lower standard of proof necessary to establish a violation may also diminish the State's incentive to gather and present all of the potentially available evidence at the probation hearing. See *McDowell*, 699 A.2d at 990 ("[t]he reality [is] that the state . . . had no incentive to present its best evidence at the revocation proceeding where there was a lower standard of proof").

The instant appeal is a case in point. Within three weeks after the filing of the new charges, defendant had a bail hearing — in which bail was denied — and a one-day probation revocation hearing. The State called only two witnesses to establish the violation — the bartender and defendant's probation officer — omitting the victim herself, the investigating officers, and other critical witnesses who later appeared at trial. Plainly, the revocation hearing in this case was not the equivalent of a criminal trial for purposes of rendering a full and final determination of guilt or innocence.

In light of these basic differences in purpose and function, most courts have concluded — correctly in our view — that it is neither fair nor wise to apply collateral estoppel to bar the relitigation of issues at a subsequent criminal trial. See, e.g., *Lucido*, 795 P.2d at 1230 (because limited purpose of probation violation hearing may "not involve or invoke presentation of all evidence bearing on the underlying factual allegations, the People's failure to satisfy the lower burden of proof at the revocation hearing does not necessarily amount to an acquittal or demonstrate an inability to meet the higher criminal standard of proof"); accord *Johnson*, 477 N.W.2d at 429; *McDowell*, 699 A.2d at 990.

Most courts have also concluded that applying collateral estoppel to bar a criminal prosecution based upon an earlier probation-revocation decision would undermine the interests of justice, and erode public confidence in the criminal justice system. As the California Supreme Court in *Lucido* cogently observed: "Preemption of trial of a new charge by a revocation decision designed to perform a wholly independent social and legal task would undermine the function of the criminal trial process as the intended forum for ultimate determinations at to guilt or innocence of newly alleged crimes." 795 P.2d at 1230-31; see also *Miller*, 797 F.2d at 342 (observing that "[t]he government is not required to complete its entire investigation before seeking to revoke an individual's probation, nor would such a requirement be in society's best interest"); *Fagan*, 489 N.E.2d at 222 ("[s]trong policy considerations militate against giving issues determined in prior litigation preclusive effect in a criminal case" because "correct determination of guilt or innocence is paramount in criminal cases"); *Dupard*, 609 P.2d at 965 (question whether defendant committed new crime "is more appropriately addressed to the criminal justice system" than informal revocation process); *McDowell*, 699 A.2d at 991 ("public confidence in our criminal justice system" requires that only criminal trials be used to determine guilt or innocence).

The possibility of inconsistent judicial determinations — as occurred in this case — does not alter our conclusion. Although consistency is certainly desirable, it is not, as the court in *Lucido* noted, "the sole measure of the integrity of judicial decisions. We must also consider whether eliminating potential inconsistency (by displacing full determination of factual issues in criminal trials) would undermine public confidence in the judicial system." 795 P.2d at 1229. Like the court in *Lucido* and the majority of other jurisdictions, we believe that the interests of justice — and public confidence in the criminal justice

system — are best served through a full and fair determination of guilt or innocence in a criminal trial, notwithstanding a prior inconsistent ruling in a revocation proceeding.

The several decisions that have concluded otherwise are not persuasive. See *People v. Kondo*, 366 N.E.2d 990, 992-93 (Ill. App. Ct. 1977); *State v. Bradley*, 626 P.2d 403, 405-06 (Or. Ct. App. 1981); *State v. Chase*, 588 A.2d 120, 122-23 (R.I. 1991); *Ex parte Tarver*, 725 S.W.2d 195, 200 (Tex. Crim. App. 1986). Each was based on the narrow conclusion that the State is estopped from relitigating "a specific finding on a material matter of fact fully litigated" at the revocation proceeding. *Chase*, 588 A.2d at 123; see also *Kondo*, 366 N.E.2d at 992-93 ("the State is barred from seeking a relitigation, upon the same evidence, at a criminal trial, of the issue that had been conclusively determined on its merits at the prior probation revocation hearing"); *Bradley*, 626 P.2d at 406 ("an express finding on a matter of fact material to a probation revocation proceeding will collaterally estop the state from attempting to prove that same fact at a later criminal trial . . . only where the factual issue was fully litigated at the probation revocation proceeding") (italics omitted); *Tarver*, 725 S.W.2d at 199-200 (factual finding decided adversely to State at revocation hearing may not be relitigated at criminal trial).

None of these decisions examined in any depth the practical differences underlying the State's opportunity and incentive to litigate new criminal charges in the revocation setting as opposed to a criminal trial. None, moreover, considered the undesirable consequences of permitting an informal and relatively summary revocation hearing to displace the traditional adjudicative function of a criminal trial. As the court in *Terry* observed, applying collateral estoppel in these circumstances would fundamentally alter the historical role of criminal prosecutions, forcing "the revocation proceedings to become the main focus of the litigation [and] turning revocation proceedings into mini-trials. Public policy and common sense dictate that this court should not countenance such a result." 620 N.W.2d at 222.

We remain persuaded that "[t]he difference in the purposes of . . . civil and criminal proceedings must affect the wisdom of applying collateral estoppel." *Stearns*, 159 Vt. at 270, 617 A.2d at 142. Here, the distinctly different purposes of a probation revocation hearing and a criminal trial make the application of collateral estoppel unwise. We conclude, therefore, that collateral estoppel did not bar the State from prosecuting defendant on the assault charge which formed the basis of

the probation violation allegations decided adversely to the State. Defendant's motion to dismiss was properly denied.

*Affirmed.*

**Johnson, J.,** dissenting. The policy issue presented by this case is whether it is fair to require a criminal defendant to defend twice against the same factual allegations if he obtains a favorable ruling in the first proceeding. Here, defendant was accused, in a probation revocation proceeding, of attacking his former girlfriend. The trial court heard evidence from the State and defendant, and made a specific factual finding that defendant acted to protect or extricate himself from an altercation with his girlfriend, and therefore did not engage in violent behavior in violation of his probation. Nevertheless, the State charged defendant with assault, based on the same events, which resulted in a hung jury. Only after a third trial, at which the State increased the number of witnesses, was defendant convicted of assault. Then, as a result of the conviction, defendant was again charged with violating his probation, and his probation was revoked. All of these hearings and trials involved the same incident.

Not surprisingly, defendant cries foul. Although the trial court in the revocation proceeding had to decide whether defendant had engaged in violent behavior, not whether defendant was guilty of the charge of assault, defendant argues that the trial court's determination of the facts undermined the elements of the subsequent charge of assault. Because the State had a full and fair opportunity to litigate the revocation case, he contends that the State should have been collaterally estopped from relitigating the facts that were decided adversely to it in that proceeding. I agree and respectfully dissent.

The United States Supreme Court has defined collateral estoppel as "mean[ing] simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443 (1970). There is no question that collateral estoppel applies to criminal cases. *State v. Dann,* 167 Vt. 119, 126, 702 A.2d 105, 110 (1997). In this context, collateral estoppel is a principle of constitutional dimension, which is derived from the protection against double jeopardy guaranteed by the Fifth and Fourteenth Amendments. *Harris v. Washington,* 404 U.S. 55, 56 (1971). Although revocation proceedings do not put a defendant in jeopardy, the policies underlying double jeopardy and collateral estoppel serve the same function. Those policies insure that "the State with all its resources and

power ... not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby ... compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187-88 (1957); see *United States v. Dixon*, 509 U.S. 688, 705 (1993). Here, the issue of fact that had already been determined was whether defendant attacked his former girlfriend at an altercation in a bar. In prosecuting defendant for assault, the State had a second opportunity to establish a different version of the same event (and a third, after the hung jury). Because he finally suffered a conviction, defendant was not even entitled to the benefit of the original finding of no violation of probation. I have to conclude, on these facts, that the State has violated the fundamental principle set forth in *Ashe*.

Of the elements of collateral estoppel established by this Court, I agree with the majority that three have been met. Those are: "(1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; [and] (3) the issue is the same as the one raised in the later action." *Dann*, 167 Vt. at 126, 702 A.2d at 110 (internal citations omitted). Where I disagree with the majority is in its conclusion that the State did not have a "full and fair opportunity to litigate the issue in the earlier action," and that applying preclusion in the later action would not be fair to the State. *Id.* Because both the technical aspects of collateral estoppel were met and the underlying policy rationale for the doctrine is supported in this case, I would hold that dismissal of the criminal case is the proper result.

To place the policy question squarely before us, I am compelled to explain why this case is not about "a full and fair *opportunity* to litigate the issue" in the prior action. *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990) (emphasis added). There is no evidence in the record that the State was denied the *opportunity* to present its full case at the revocation hearing, by, for example, the court limiting the State to the number of witnesses it could call. Instead, the State's true complaint is that it failed to *exploit* the opportunity to litigate the crucial facts at issue in the revocation hearing. The proper inquiry, therefore, is whether the State was given a chance to present its case fully, not whether the State elected to present that case as completely as possible. See *Lucido v. Super. Ct.*, 795 P.2d 1223, 1224 n.2 (Cal. 1990).

The factors identified by the State and the majority in support of the position that the State did not have a full and fair opportunity fail to identify any barrier that was outside the control of the State. For example, the State chose to bring the revocation proceeding within three weeks after filing the new charges, knowing that the hearing would be held within a short period of time. The State also chose to rely on only two witnesses in this proceeding, instead of the nine witnesses it produced at the second criminal trial, and chose not to call crucial witnesses such as the victim herself. The State complains that it did not have the incentive to fully litigate at this early stage of the proceedings, but the lack of incentive should have counseled against bringing the probation revocation before the criminal assault. No rule of law required the State to proceed to probation revocation first, and, in fact, we have advised against such an approach in the past. See *State v. Begins*, 147 Vt. 295, 300, 514 A.2d 719, 723 (1986) (better method of dealing with problems raised by concurrent criminal and revocation proceedings is to postpone revocation proceedings). The point is that the State made several strategic choices. Those choices did not bear fruit for the State, but it was not because the State was not afforded the opportunity to litigate its case fully.[1]

Contrary to the majority's assertion, this case closely resembles those where courts have barred subsequent relitigation of specific facts previously determined at prior hearings. In *Ex parte Tarver*, 725 S.W.2d 195, 198 (Tex. Crim. App. 1986), the probationer was charged with assault and the State brought a revocation hearing. At the hearing, in which three witnesses testified for the State, the court found the allegations of assault unbelievable. The court of criminal appeals barred the subsequent criminal trial on the ground of collateral estoppel. The court held that "it is clear that a fact issue, i.e. whether applicant assaulted the complainant, has been found

---

[1] Even *Lucido*, the case on which the majority relies, recognized it was answering a policy question based on fairness, not on a full and fair opportunity to litigate. 174 Vt. at 142, 806 A.2d at 1012. The *Lucido* majority explicitly states that "[i]t appears that the People could have presented more evidence had they wished to . . . . [T]he important question, at least for threshold purposes, is whether the People had the *opportunity* to present their entire case at the revocation hearing, not whether they availed themselves of the opportunity." 795 P.2d at 1224 n.2 (emphasis in original). The *Lucido* majority is clear that its decision is based on the policy rationale behind collateral estoppel, not on the technical requirements of the doctrine. "[A]ssuming all the threshold requirements are satisfied, however, our analysis is not at an end. We have repeatedly looked to the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting." *Id.* at 1226.

adversely to the State." *Id.* at 198. Similarly, at the revocation hearing in *State v. Chase*, 588 A.2d 120, 121 (R.I. 1991), the court made a determination that the defendant did not buy drugs from an undercover police officer, after hearing testimony from both the defendant and the undercover officer. The Rhode Island Supreme Court held that "a specific finding on a material matter of fact fully litigated at the probation-revocation hearing will collaterally estop the state from attempting to prove the same fact at trial." *Id.* at 123; see also *People v. Kondo*, 366 N.E.2d 990, 992-93 (Ill. App. Ct. 1977) ("[T]he court made a finding on the only disputed question of fact involved .... [T]he State is barred from seeking a relitigation, upon the same evidence, at a criminal trial, of the issue that had been conclusively determined ....."); *State v. Donovan*, 751 P.2d 1109, 1114 (Or. 1988) ("[I]f the state elects and a judge agrees to conduct a probation revocation hearing that concerns any of the elements of the new offense, then collateral estoppel ... will apply against the state if the judge finds that a necessary element is not proven at the hearing."). These cases are indistinguishable from the present in which the court made a specific factual finding that defendant's contact with his former girlfriend was accidental. All the technical aspects of the collateral estoppel doctrine point toward barring the State from relitigating that specific finding.

The resolution of this case, therefore, hinges on whether "applying preclusion in the later action is fair." *Trepanier*, 155 Vt. at 265, 583 A.2d at 587. The majority reasons that it is not fair because the differences in procedure and purpose between probation revocation hearings and criminal trials do not justify preclusion on the factual issues decided, and that the criminal trial should be preserved as the forum where criminal charges are adjudicated.

There are substantial differences between a revocation proceeding and a criminal hearing, but these differences hardly make it unfair to apply preclusion to the State. In fact, the differences are *advantageous* to the State, and therefore disadvantageous to the defendant. See *Chase*, 588 A.2d at 123. As already noted, the State has the advantage of choosing when to proceed and how vigorously to prosecute. The State enjoys a lower burden of proof than at a criminal trial, and may use evidence that is not admissible under a strict reading of the rules of evidence. This allows the State to make strategic choices about how much evidence it will put on. Because the defendant has no choice but to defend or suffer a violation, the State has the further opportunity to "discover" a defendant's case at the revocation hearing and essentially

to audition its case in a relatively low stakes setting before the criminal trial. See *Begins*, 147 Vt. at 297, 514 A.2d at 721; see *Tibbs v. Florida*, 457 U.S. 31, 41 (1982) (multiple prosecutions give the State "another opportunity to supply evidence which it failed to muster in the first proceeding" and allow the State to "hon[e] its trial strategies ... through successive attempts at conviction") (internal quotations omitted). Finally, the State is not precluded, on double jeopardy grounds, from bringing a subsequent criminal prosecution based on the same facts.[2]

The only prejudice the State suffers in this scenario, assuming collateral estoppel applies, is the preclusive effect of any specific issues of fact decided at the revocation hearing.[3] But the State can avoid that harm completely by choosing to prosecute the underlying offense first. We confronted the problems raised by the order of prosecution in *Begins*, and concluded that "[w]hen it is not detrimental to the probationer or to the public's safety, the better method of dealing with problems of concurrent criminal and probation revocation jurisdiction is to postpone the probation proceedings until after disposition of related criminal proceedings." 147 Vt. at 300, 514 A.2d at 723. In *Begins*, we recognized the disadvantages to a defendant who is subject to two proceedings, and found it necessary, to preserve a defendant's Fifth Amendment right to remain silent, to create an exclusionary rule to prevent the State's use of a defendant's testimony in the subsequent criminal prosecution. *Id.* at 299-300, 514 A.2d at 722-23. But we did not remove from the State the discretion to make the choice on the order of prosecution. *Id.* at 298, 514 A.2d at 722. Because the State can avoid any potential prejudice to its criminal case, it is not fair to allow the State "to treat the revocation hearing as a 'Heads I win, tails I flip again' proposition." *Lucido*, 795 P.2d at 1243 (Broussard, J., dissenting).

Moreover, revocation proceedings are not like other hearings where the need for summary dispositions explains our reluctance to give their results preclusive effect. This case is unlike *State v. Stearns*, 159 Vt. 266, 617 A.2d 140 (1992), where we declined to apply collateral estoppel to bar prosecution for DUI when the State failed to prove the

---

[2] Because the State must prove a criminal charge beyond a reasonable doubt, collateral estoppel does not preclude the defendant who loses a revocation hearing from trying the facts anew in a later criminal prosecution.

[3] Depending on the similarity of the issues in the revocation hearing and a criminal charge based on the same conduct, the State may or may not be precluded from bringing the subsequent criminal prosecution.

defendant refused to take a breath test at a civil suspension hearing. There, we held that the State had not had a "full and fair opportunity" because the civil suspension hearing is a summary proceeding designed to get suspected drunk drivers off the road expeditiously. *Id.* at 271, 617 A.2d at 142-43. See 23 V.S.A. § 1205 (providing for civil suspension of driver's license by affidavit alone). Similarly, we do not apply collateral estoppel to small claims cases because in those proceedings the procedures have been designed to "provide a simple, informal and inexpensive procedure for determining" cases with small amounts in controversy, where the parties are typically unrepresented by counsel. *Cold Springs Farm Dev., Inc. v. Ball*, 163 Vt. 466, 469, 661 A.2d 89, 91 (1995) (citation omitted). These informal procedures are "woefully inadequate" to support the application of collateral estoppel in a subsequent suit. *Id.* at 470, 661 A.2d at 91-92. In revocation proceedings, in contrast, there is no need for promptness or accessibility or informality that limit the procedures, such that application of collateral estoppel in a subsequent criminal trial would be unfair. To the extent that public safety is threatened by the probationer, the State may use conditions of release or the denial of bail on the new charges to protect the public.[4] See *Lucido*, 795 P.2d at 1238-39 (Mosk, J., dissenting).

The final consideration of the fairness question is the impact that applying collateral estoppel to facts determined at a revocation proceeding will have on our judicial system. Here, too, the prejudice suffered by the judicial system is greater when collateral estoppel is not applied to revocation proceedings. We have identified those interests as protecting the integrity of the judicial system by avoiding the possibility of inconsistent judgments, relieving litigants from having to prove a fact twice, and preventing an uneconomic use of judicial resources. See *In re Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 20, 769 A.2d 668, 673 (2001). I cannot agree with the analysis in *Lucido* that these policies weigh *against* applying collateral estoppel in revocation cases. Indeed, I believe that applying collateral estoppel to this case serves all three policies, particularly where the pitfalls of not applying collateral estoppel are so evident here — this defendant was put to his proof three times, received a different result each time, and the State needed three court proceedings before it succeeded in convicting defendant.

---

[4] Defendant in this case was held without bail prior to hearing.

First, the public must have confidence that our system produces accurate results, no matter the purpose of the hearing. For the State to try defendant criminally for the same incident plainly calls into question the accuracy of the fact-finding at the revocation hearing. Failure to apply collateral estoppel leaves us hard pressed to explain why the factual finding at the criminal trial is any more valid than the factual findings of the revocation hearing. Such relitigation casts a shadow over all revocation hearings, renders their results less valid than the results of a criminal trial, and does not inspire confidence in our judicial system.

Second, the failure to apply collateral estoppel in this case forced defendant to prove his case more than once, giving the State multiple "bites at the apple," and requiring defendant to mount multiple defenses against the same charge. As discussed above, the defendant is prejudiced when the full power of the State is brought to bear against an individual defendant repeatedly. We should not "allow[ ] the [State], through sheer perseverance, to litigate and litigate until [it], in [its] view, 'get[s] it right.'" *Lucido*, 795 P.2d at 1236 (Mosk, J., dissenting).

Third, allowing the State a second chance to litigate what happened between defendant and his former girlfriend is an unnecessary drain on judicial resources. It is a waste of public funds to allow the State another chance to present its case, when it had a fair opportunity to do so at the revocation hearing. The concern for judicial economy is especially pressing where the State failed under a less demanding evidentiary standard than that faced at a criminal trial. Indeed, in various contexts our actions are frequently guided by concern for judicial economy. See, e.g., *In re Estate of Gillin*, 172 Vt. 546, 548, 773 A.2d 270, 273 (2001) (mem.) (in interests of judicial economy, Court reaches issue trial court did not decide, rather than remand); *State v. Tongue*, 170 Vt. 409, 414, 753 A.2d 356, 359-60 (2000) (in interest of judicial economy, trial court need not reconsider pretrial suppression ruling when new facts are adduced on motion to reconsider); Reporter's Notes, V.R.A.P. 2 (noting rule allows this Court to suspend rules "to secure the just, speedy, and inexpensive determination of every action"). I see no reason to cast aside those concerns in this setting.

The *Lucido* majority identifies an additional rationale for not applying collateral estoppel to revocation hearings. It holds that public policy requires that "ultimate determinations of criminal guilt and innocence not be made at probation revocation hearings," 795 P.2d at

1224, but should be preserved for a full criminal trial. I agree, but I emphasize again that whether the determination of criminal charges is made at the probation revocation hearing or at a criminal trial is a matter of the State's exercise of prosecutorial discretion. Although it is entirely possible to reserve the trial of criminal charges for full criminal trials by requiring the State to proceed with the criminal trial first, I doubt that the State would have us adopt a rule that removes that choice from its discretion.

The State could have waited until the conclusion of the criminal trial before trying the probation revocation — it chose not to. We should not allow the State to toss aside unfavorable judicial determinations as a result. As Justice Mosk stated in *Lucido*, "the People control the sequence of proceedings. They alone determine what appears to be in the best interest of society and public safety. They should be bound by the procedural choice they make." 795 P.2d at 1239 (Mosk, J., dissenting). Therefore, I would hold that when the trial court in a revocation hearing makes a specific factual finding, that finding is entitled to collateral estoppel, assuming all other elements of the doctrine are met. Accordingly, I respectfully dissent.