In this case, we are asked to revisit our precedent in Ex parte Tarver, 725 S.W.2d 195 (Tex. Crim. App. 1986), to determine *654 whether that decision remains good law. More than thirty years ago in Tarver , we held that the doctrine of collateral estoppel bars the State from prosecuting an offense following a trial judge's finding of "not true" as to the commission of that same offense at an earlier probation revocation hearing. The State contends in its petition for discretionary review that Tarver has been abrogated and should now be expressly abandoned. We conclude that Tarver meets the narrow criteria for overruling our prior precedent, and we now abandon the rule of that decision. We, therefore, reverse the judgment of the court of appeals that had applied Tarver to uphold the trial court's dismissal of the information filed against Amanda Louise Waters, appellee, for the offense of Driving While Intoxicated, and we remand this case to the trial court for further proceedings.
I. Background
In October 2015, while Waters was on community supervision for an offense, she was arrested for DWI. Based on her arrest, the State filed a motion to revoke her community supervision, alleging, among other grounds, that she had violated the terms of her supervision by committing another criminal offense.[1]
In February 2016, the trial court held a hearing on the State's motion to revoke. The State's sole evidence in support of its allegation that Waters had committed DWI was the testimony of Waters's community supervision officer, Officer Jetton. Officer Jetton testified that he was aware that Waters had been arrested for DWI in October 2015, but he otherwise had no personal knowledge of the facts surrounding the alleged offense. Based on this evidence, the trial judge determined that the State had failed to prove by a preponderance that Waters committed DWI as alleged in the State's motion, and he found the allegation "not true."[2] The trial judge rejected the State's motion to revoke, and he issued an order continuing Waters on community supervision.[3]
In March 2016, the State filed an information charging Waters with the same instance of DWI that had been alleged in the motion to revoke. Waters subsequently filed a pretrial application for a writ of *655 habeas corpus in which she contended that her prosecution for DWI was barred by collateral estoppel pursuant to this Court's holding in Tarver, 725 S.W.2d at 199. Relying on Tarver, Waters asserted that, because the State had previously sought to revoke her community supervision based on the same instance of DWI that was alleged in the information and the trial judge at the revocation hearing had found that allegation "not true," the State was precluded from prosecuting her for that offense. Agreeing with Waters's argument that her prosecution for DWI was barred by collateral estoppel in light of Tarver , the trial court granted her request for pretrial habeas relief, and it dismissed the information against her.
The State appealed. Although it acknowledged that Tarver would support Waters's position that her prosecution for DWI was barred by collateral estoppel, the State argued that Tarver has been implicitly overruled by this Court and is no longer good law. The court of appeals rejected this argument, observing that this Court has given no indication that Tarver has been overruled, and thus it remains binding on the lower appellate courts. See State v. Waters , No. 02-16-00274-CR, 2017 WL 2877086, at *2 (Tex. App.-Fort Worth July 6, 2017) (mem. op., not designated for publication). Applying the rule of Tarver to Waters's case, the court of appeals agreed with the trial court's conclusion that the DWI charge had already been resolved adversely to the State in a final judgment from the probation revocation hearing. Id. at *3. Therefore, any subsequent prosecution for that offense constituted an attempt by the State to relitigate the same fact issue that had already been resolved against it, and the prosecution was thus barred by collateral estoppel under Tarver . Id. (citing Tarver , 725 S.W.2d at 198, 200 ).
This Court granted the State's petition for discretionary review to evaluate whether Tarver remains good law, such that Waters's prosecution for the same instance of DWI that was found "not true" at the revocation hearing should be precluded pursuant to the doctrine of collateral estoppel.[4]
II. Analysis
For reasons explained more fully below, we agree with the arguments presented in the briefs of the State and the amicus curiae[5] that collateral estoppel should not apply to bar prosecution of an offense following a finding of "not true" regarding the commission of that same offense at an earlier revocation hearing. After we review this Court's decision in Tarver below, we explain why we now conclude that collateral estoppel is inapplicable under these circumstances.
A. Collateral Estoppel as Applied in Tarver *656 In Tarver , this Court considered facts that are procedurally similar to those in the instant case. After he was convicted of an offense and placed on probation, Tarver was arrested for another offense, assault. Tarver , 725 S.W.2d at 196. The State filed a motion alleging that Tarver had violated the terms of his probation by committing the assault. Id. The State also filed an information charging Tarver with the same assault. Id. After a hearing on the State's motion to revoke at which the State presented evidence in support of the allegation, the trial court found the alleged assault "not true," noting that it had found the State's evidence not credible. Id. The trial court denied the motion to revoke Tarver's probation. Id.
Tarver then sought dismissal of the pending assault charge through a pretrial application for a writ of habeas corpus. Tarver asserted that the charge should be dismissed because the trial court's finding of "not true" represented a finding that he was not guilty of assault, and the State was therefore barred from prosecuting him for the same offense pursuant to double jeopardy principles. Id. After the trial court denied relief, the court of appeals reversed and dismissed the information, and this Court upheld the lower appellate court's decision. Id. at 197.
At the outset of its analysis, this Court observed that subjecting Tarver to prosecution for assault under these circumstances would not violate basic double jeopardy principles under the federal Constitution. Id. Because the double jeopardy proscription of the Fifth Amendment protects an accused from being twice placed in jeopardy of punishment for the same offense, that principle was not implicated by the prosecution for an offense that had previously been the basis of an unsuccessful motion to revoke probation. Id. Tarver was "not, therefore, being twice placed in jeopardy for the same offense." Id. Accordingly, the Court in Tarver held that "basic double jeopardy protections would not be violated by subjecting [Tarver] to prosecution for assault." Id.
Although basic double jeopardy protections were not implicated, this Court nevertheless determined that the corollary doctrine of collateral estoppel would apply to bar Tarver's prosecution for assault. Id. The Court observed that that doctrine " 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " Id. at 198 (quoting Ashe v. Swenson , 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) ). Applying this test to Tarver's case, this Court found it "clear that a fact issue, i.e., whether [Tarver] assaulted the complainant, has been found adversely to the State." Id. This Court reasoned, "The State is now attempting to relitigate that same issue. The doctrine of collateral estoppel bars such a relitigation." Id. This Court explained,
[W]e must determine whether the Ashe v. Swenson test was met. The questions to be asked are: Has a fact issue already been determined, adversely to the State, in a valid and final judgment between the same parties? Is the State now trying to relitigate that same fact issue? In the instant case, we find that the fact the State now seeks to prove has already been resolved adversely to the State. The parties were the same as they would be in the county court prosecution. The allegation the State sought to prove was identical. The hearing was before a district court judge acting as finder of fact. The major difference between the two proceedings was the standard of proof, but it was the lower , "preponderance of the evidence," standard *657 the State failed to meet in the revocation hearing. Having failed to meet that burden, the State is now attempting to relitigate the same resolved fact issue, under a higher burden of proof.
Id. at 199 (citations and footnote omitted).
Although it expressly stated that "basic" double jeopardy protections were not implicated, this Court's opinion cited to double jeopardy principles as further justifying its decision. The opinion stated,
The State is not trying twice to prove applicant guilty, because "guilt" as such was not the issue in the probation revocation hearing. The State is attempting, however, to prove the fact that would lead to a finding of guilt, i.e., that applicant committed the alleged assault, after once failing to prove that fact in a full hearing. To allow such a second attempt would be to allow one of the risks the Double Jeopardy clauses [sic] protects against: "The Double Jeopardy Clause also precludes the prosecutor from 'enhanc[ing] the risk that an innocent defendant may be convicted,' by taking the question of guilt to a series of persons or groups empowered to make binding determinations."
Id. at 200 (quoting Swisher v. Brady , 438 U.S. 204, 216, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978) ).
In view of all these considerations, this Court held that "the issue of whether [Tarver] committed the particular assault alleged in the information has been found adversely to the State, and the doctrine of collateral estoppel bars relitigating that issue in the county criminal court at law prosecution." Id. But, in seeking to explain the narrowness of its holding, the Tarver Court concluded, "It is only in the particular circumstances of this case, where the trial court does make a specific finding of fact that the allegation is 'not true,' that a fact has been established so as to bar relitigation of that same fact." Id.
B. Collateral Estoppel Inapplicable Following "Not True" Finding At Revocation Hearing
In their briefs to this Court, the parties acknowledge that it is possible to interpret Tarver as being based on either of two rationales-that is, Tarver may be interpreted as relying either on federal collateral estoppel principles as embodied in the double jeopardy clause of the Fifth Amendment, or, alternatively, as being based on state common-law estoppel principles.[6] We will consider both rationales as *658 possibly supporting Tarver 's holding, but we ultimately conclude that neither rationale is persuasive.[7] With respect to the type of collateral estoppel that is embodied in the Fifth Amendment double jeopardy clause, we conclude that federal double jeopardy principles are not implicated by the instant situation, given that a person facing an allegation of a new offense at a probation revocation hearing has not been placed in jeopardy of punishment for that offense. Because jeopardy does not attach during the revocation hearing, double jeopardy principles cannot properly bar a subsequent criminal trial for that same offense. With respect to the applicability of state common law estoppel principles, we conclude that significant legal and policy considerations counsel against application of those principles to this situation. We explain these conclusions in turn below.
1. Double Jeopardy Not Implicated
The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. The guarantee against double jeopardy protects against multiple criminal punishments for the same offense and successive prosecutions for the same offense after acquittal or conviction. Monge v. California , 524 U.S. 721, 727-28, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998) ; Ex parte Denton , 399 S.W.3d 540, 545 (Tex. Crim. App. 2013).
In Tarver , this Court's analysis appeared to suggest that double jeopardy principles were implicated by these circumstances, given our reliance on the Supreme Court's decision in Ashe v. Swenson , which is a decision based on the intersection of double jeopardy and collateral estoppel principles. See 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In Ashe , the Supreme Court indicated that collateral estoppel principles are a component of the double jeopardy clause. Id. at 445-46, 90 S.Ct. 1189 ; see Dowling v. United States , 493 U.S. 342, 347, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) ( Ashe "recognized that the Double Jeopardy Clause incorporates the doctrine of collateral estoppel"). The underlying facts in Ashe involved a robbery of six men who had been playing poker in a basement. Ashe, 397 U.S. at 437, 90 S.Ct. 1189. After Ashe was tried and acquitted for the robbery of one of the victims, the State subsequently prosecuted him for the robbery of a different victim, and this time he was convicted. Id. at 438-40, 90 S.Ct. 1189. The Supreme Court held that the second prosecution was barred by principles of collateral estoppel as embodied within the Fifth Amendment guarantee against double jeopardy. Id. at 446, 90 S.Ct. 1189. The Court explained that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Id. at 443, 90 S.Ct. 1189. Explaining the manner in which collateral estoppel would apply in this context, the Court stated, "Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and *659 conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Id. at 444, 90 S.Ct. 1189 (quotation marks and citation omitted). Applying this concept to Ashe's case, the Court observed that, given the evidence presented during the first trial, the single rationally conceivable issue in dispute before the jury was whether Ashe had been one of the robbers. Id. at 445, 90 S.Ct. 1189. By acquitting Ashe, the jury had signaled its conclusion that Ashe was not one of the robbers. Id. Under these circumstances, the Court held that the double jeopardy clause would protect Ashe from having to " 'run the gauntlet' a second time." Id. at 446, 90 S.Ct. 1189 (quoting Green v. United States , 355 U.S. 184, 190, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) ). Concluding that Ashe could not constitutionally be haled before a new jury to relitigate the issue of whether he participated in the robberies, the Court granted him post-conviction habeas relief from his conviction. Id. at 447, 90 S.Ct. 1189.
To the extent that this Court's opinion in Tarver indicated that Ashe 's rule of collateral estoppel stemming from the federal double jeopardy clause is applicable to these circumstances, it is now clear that this assessment was mistaken. See Tarver , 725 S.W.2d at 199-200. Ashe is distinguishable because, in that case, Ashe was subjected to criminal prosecution for an offense, followed by a second attempt at prosecution under circumstances that would have required relitigation of the same facts already found in his favor in the first trial. See Ashe, 397 U.S. at 445-46, 90 S.Ct. 1189. By contrast, the instant situation involves a revocation hearing followed by a first attempt at criminal prosecution, rather than successive criminal prosecutions involving the same facts. This distinction is critical because, unlike the initial proceeding in Ashe , in a revocation proceeding, the defendant is not on trial for the newly alleged offense. Rather, in a revocation proceeding, the central question is whether the probationer has violated the terms of her community supervision and whether she remains a good candidate for supervision, rather than being one of guilt or innocence of the new offense. Moreover, because guilt or innocence is not the central issue at a revocation hearing, a defendant does not face punishment for the newly alleged offense in that proceeding. As we correctly recognized in Tarver , any punishment she would receive as a result of the revocation hearing relates back to the original offense for which she was placed on community supervision, not to the newly alleged offense. See Tarver , 725 S.W.2d at 197. Thus, because there is no possibility of a new conviction and punishment arising from a revocation hearing, jeopardy does not attach for any offense that is alleged as a violation of the terms of community supervision in a revocation hearing, and double jeopardy protections are inapplicable. See, e.g., Stringer v. Williams , 161 F.3d 259, 262 (5th Cir. 1998) (the Double Jeopardy Clause does not apply to probation revocation proceedings; probation revocation proceedings " 'are not designed to punish a criminal defendant for violation of a criminal law' ") (quoting United States v. Whitney , 649 F.2d 296, 298 (5th Cir. Unit B 1981) ); Showery v. Samaniego , 814 F.2d 200, 202 (5th Cir. 1987) ("We have held that the double jeopardy clause does not apply to parole and probation revocation hearings.... Parole and revocation proceedings are not designed to punish for the violations of criminal laws, but to determine whether the conditions of parole or probation have been violated[.]").
*660 Since Tarver , this Court has decided multiple cases that appear to conflict with its application of federal collateral estoppel principles in this context. For example, this Court has indicated that, where jeopardy has not attached in a first proceeding, double jeopardy protections, including federal collateral estoppel principles, are wholly inapplicable. See York v. State , 342 S.W.3d 528, 551 & n. 151 (Tex. Crim. App. 2011) ("If jeopardy has not attached, then no aspect of double jeopardy, including its collateral-estoppel component, is implicated."); see also Ex parte Doan , 369 S.W.3d 205, 212 (Tex. Crim. App. 2012) (recognizing that circumstances analogous to those in the instant case fall outside "the narrow grasp of the Double Jeopardy clause"). Now that we have the benefit of more recent precedent declining to apply the concept of federal collateral estoppel in this context, we conclude that no aspect of the Fifth Amendment's double jeopardy protections apply, including Ashe 's collateral estoppel rule. Because jeopardy does not attach in revocation proceedings for any offense that is alleged as a violation of the terms of community supervision, double jeopardy principles cannot properly apply to bar a subsequent prosecution under these circumstances.
In support of this conclusion, we note that, in the approximately thirty years since Tarver was decided, the overwhelming weight of authority from other jurisdictions supports our current view that that decision misapplied double jeopardy principles to probation revocation proceedings. See, e.g., State v. McDowell, 242 Conn. 648, 699 A.2d 987, 990 (1997) (under analogous circumstances, stating, "[J]eopardy does not attach at the revocation hearing. Accordingly, we hold that the double jeopardy clause does not bar the prosecution of the charges pending against the defendant."); State v. Brunet , 174 Vt. 135, 806 A.2d 1007, 1011 (2002) (same, and stating, "[I]t is universally acknowledged that a revocation proceeding is not essentially 'criminal' in nature, and that double jeopardy does not attach at a revocation hearing to bar a trial of the new criminal charges.").[8] In view of all these considerations, we now hold that double jeopardy protections, including the rule of collateral estoppel described by Ashe , are inapplicable to the instant situation.
2. Important Considerations Weigh Against Application of Common Law Estoppel
Setting aside double jeopardy principles, we now consider whether Tarver should nevertheless be upheld under the possible alternative rationale of state common law collateral estoppel. With respect to this matter, we agree with the position taken by the State and the amicus curiae that important considerations described *661 below weigh against application of common law estoppel to these circumstances.
At the outset, we note that the common-law doctrine of collateral estoppel is subject to certain limitations. We have recognized that collateral estoppel applies only when facts in the first proceeding were "necessarily decided" and "essential to the judgment." York , 342 S.W.3d at 539 & n. 47, 545 n. 94 (citing Murphy v. State , 239 S.W.3d 791, 795 (Tex. Crim. App. 2007) ; Restatement (Second) of Judgments § 27 ); see also Sysco Food Services, Inc. v. Trapnell , 890 S.W.2d 796, 801 (Tex. 1994) (observing that, for collateral estoppel to apply, facts must be "essential to the judgment in the first action"). As the Supreme Court has explained in the context of common law estoppel principles,
Issue preclusion bars successive litigation of "an issue of fact or law" that is "actually litigated and determined by a valid and final judgment, and ... is essential to the judgment." If a judgment does not depend on a given determination, relitigation of that determination is not precluded.... A determination ranks as necessary or essential only when the final outcome hinges on it.
Bobby v. Bies , 556 U.S. 825, 834-35, 129 S.Ct. 2145, 173 L.Ed.2d 1173 (2009) (citing and quoting Restatement (Second) of Judgments § 27 (1980), and citing 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4421, p. 543 (2d ed. 2002) ).
Here, we are more persuaded that a judge's finding of "true" or "not true" is not a determination that is "necessary or essential" to the judgment continuing a defendant on community supervision, such as would trigger common law estoppel. See id. As we recognized in Tarver , a trial judge has broad discretion in ruling on a revocation motion. See Tarver , 725 S.W.2d at 200 ("A trial court in a motion to revoke probation hearing has wide discretion to modify, revoke, or continue the probation."). Thus, when a trial judge at a revocation hearing finds an alleged new offense either "true" or "not true," that determination does not require him to rule in any particular manner-rather, the judge may, in his discretion, continue or modify the defendant on community supervision, regardless of the determination. See TEX. CODE CRIM. PROC. art. 42A.751(d) & 42A.752(a). Because of the highly discretionary nature of revocation proceedings, and because neither the finding of "true" or "not true" compels any particular result on the revocation proceedings, collateral estoppel principles are not implicated. Thus, the "necessary or essential" requirement for application of common law estoppel is not established, given that the trial court's decision to continue the defendant on community supervision does not "hinge on" the trial court's determination in this regard. See Bies , 556 U.S. at 834-35, 129 S.Ct. 2145.
Aside from this matter, several other basic limitations of common law collateral estoppel apply to these circumstances. Common law collateral estoppel may not apply where there is a difference in the quality or extensiveness of the procedures followed in the two proceedings; where public interests counsel against application of the doctrine; or where the parties did not have a full incentive or opportunity to litigate the issue in the earlier proceeding.[9] These exceptions to *662 the doctrine are applicable here. With respect to the differences in the quality or extensiveness of the procedures followed in the two proceedings, we note that the commencement of criminal trial proceedings carries with it substantial procedural consequences, and, importantly, it triggers the right to a determination of guilt or innocence by a jury.[10] These procedures fulfill the purpose of protecting the rights of both the State and a defendant to a full and fair determination of guilt or innocence. By contrast, a revocation hearing is conducted without the same degree of procedural protections. See TEX. CODE CRIM. PROC . art. 42A.751(d) ; Doan , 369 S.W.3d at 208 (recognizing that "defendants in revocation hearings do not enjoy the same panoply of procedural rights as defendants in criminal trials"). These factors amount to a notable difference in the quality and extensiveness of the procedures followed in a motion to revoke, as compared to a criminal trial.
With respect to the potential adverse impact on the public interest, we agree with the view taken by multiple courts indicating that application of collateral estoppel under these circumstances is contrary to the public interest. For example, the Supreme Court of Vermont in State v. Brunet explained, "We believe that the interests of justice-and public confidence in the criminal justice system-are best served through a full and fair determination of guilt or innocence in a criminal trial, notwithstanding a prior inconsistent ruling in a revocation proceeding." 806 A.2d at 1013. It continued, "Applying collateral estoppel in these circumstances would fundamentally alter the historical role of criminal prosecutions, forcing the revocation proceedings to become the main focus of the litigation [and] turning revocation proceedings into mini-trials. Public policy and common sense dictate that this court should not countenance such a result." Id. We agree with this reasoning. Application of collateral estoppel under these circumstances, in practice, undermines the traditional role of criminal prosecutions in assessing a defendant's guilt or innocence and allows revocation hearings to preempt the main event of the criminal trial.
With respect to the third consideration addressing whether the parties had a full incentive or opportunity to litigate the issue in the prior proceeding, we conclude that this consideration also weighs against application of collateral estoppel here. In a revocation proceeding, where the burden of proof is by a preponderance of the evidence, the State may not be expected to bring its best evidence, believing less evidence to be adequate to meet the lower burden of proof. See Brunet , 806 A.2d at 1012 (observing that the "lower standard *663 of proof necessary to establish a violation may also diminish the State's incentive to gather and present all of the potentially available evidence at the probation hearing"); McDowell , 699 A.2d at 990 ("The reality [is] that the state ... had no incentive to present its best evidence at the revocation proceeding where there was a lower standard of proof"). Thus, this third consideration also weighs against application of collateral estoppel here.
This discussion is not intended to suggest a total absence of countervailing considerations. As Waters suggests in her brief, there are at least two arguments in favor of applying common law collateral estoppel here-prevention of inconsistent rulings between revocation hearings and trials, and possibly some conservation of judicial resources. While we recognize and agree that these are important interests, we conclude that, on the whole, these considerations are outweighed by the other factors discussed above. Thus, we conclude that common law collateral estoppel should not apply to these circumstances.
Although we are mindful of the requirements of stare decisis that we should not lightly overrule our precedent, in view of all the foregoing considerations, we hold that Tarver falls within that narrow category of cases for which adhering to precedent would not serve the purposes of the doctrine. See Paulson v. State , 28 S.W.3d 570, 571-72 (Tex. Crim. App. 2000) (recognizing that, pursuant to the doctrine of stare decisis, precedent may be overruled if it was "poorly reasoned"). Accordingly, having determined that Tarver should be overruled, we conclude that collateral estoppel does not apply to these circumstances, and a subsequent criminal prosecution is not barred following a trial judge's finding of "not true" at a revocation hearing.
III. Conclusion
Having concluded that Tarver should be overruled, we reverse the judgment of the court of appeals that had relied on Tarver to reach its decision upholding the dismissal of the information filed against Waters for the offense of DWI. We remand this case to the trial court for further proceedings not inconsistent with this decision.
Alcala, J., delivered the opinion for a unanimous Court. Newell, J., filed a concurring opinion in which Hervey, J., joined.
We held in Ex parte Tarver that the State cannot prosecute a defendant for a criminal offense after a trial court rejects, at a probation revocation hearing, an allegation that the defendant committed that crime.[1] We based that decision on the doctrine of collateral estoppel, which the United States Supreme Court held in Ashe v. Swenson is "embodied in the Fifth Amendment guarantee against double jeopardy."[2] Today, we overrule Ex parte Tarver , and I join this Court's opinion doing so.
I write separately to express my reservations that the civil doctrine of collateral estoppel is truly embodied within the text or history of the Fifth Amendment. When considering the doctrine in the context of the return of irreconcilably inconsistent verdicts, a unanimous Supreme Court observed that issue preclusion principles should have only "guarded application" in criminal cases.[3] More recently, a plurality *664 of that Court noted that the text of the Double Jeopardy Clause prohibits re-litigation of offenses, not issues or evidence.[4] It is the Seventh Amendment, which deals with suits at common law, that specifically and constitutionally prohibits re-litigation of facts tried by a jury.[5]
Further, the plurality explained that the original public understanding of the Fifth Amendment did not encompass a prohibition against the re-litigation of issues or evidence.
The Double Jeopardy Clause took its cue from English common law pleas that prevented courts from retrying a criminal defendant previously acquitted or convicted of the crime in question. But those pleas barred only repeated "prosecution for the same identical act and crime," not the retrial of particular issues or evidence.[6]
The plurality went on to note that this understanding is confirmed by the Court's precedent, which determines double jeopardy violations by focusing upon the existence of similar statutory elements rather than overlap in proof offered to establish multiple crimes.[7]
In contrast, Ashe v. Swenson found its persuasive strength not in the text or history of the Double Jeopardy Clause, but in the theory that the Double Jeopardy Clause protected a man who has been acquitted from having to "run the gauntlet" a second time.[8] The factual scenario presented in Ashe was certainly egregious, with the State conceding that it had treated the defendant's first trial as a dry run for the second prosecution. But conceptually, that type of situation seems more appropriately analyzed as a due process rather than double jeopardy violation.
In this case, the Court rightly moves away from the "run the gauntlet" theory recognized in Ashe . I agree with the Court that this is one of the rare exceptions to the doctrine of stare decisis . With these thoughts, I join this Court's opinion.

In addition to the allegation that Waters had committed DWI, the State's motion to revoke alleged four other violations of the terms of her community supervision, including that she was in arrears three hours of community service restitution; had failed to pay court costs; had failed to pay the supervision fee; and had failed to pay the crime stoppers fee.

Specifically, in finding the alleged offense "not true," the trial judge made the following comments on the record, which were apparently directed at Waters:
When the State alleges a new offense, they have to prove that. Now they don't have to prove it beyond a reasonable doubt. They could have brought the officers involved in this case to court, and they would not have to prove it to a jury, they just have to prove it to me by what's called a preponderance of the evidence; that makes their jobs easier, but the fact that a person is arrested is insufficient to prove a new offense, and so that [allegation] I will find not true.
In addition, in the signed order continuing Waters on community supervision, the trial judge entered a finding that the allegation regarding the new DWI was "not true." With respect to the remaining allegations in the State's motion, the trial judge found true the allegation relating to Waters's failure to complete her community service hours, but otherwise found the remaining allegations not true.

The order continuing Waters on community supervision provided that the original order imposing community supervision would remain in full force and effect, with the added condition that Waters would complete a "Cognitive Corrective Class" before a certain date. The order did not otherwise modify or amend the original conditions of Waters's community supervision.

The ground upon which we granted review asks,
Whether this Court should explicitly overrule Tarver and reject the concept of common law collateral estoppel since collateral estoppel should not bar the State from prosecuting a criminal offense following an adverse finding at a probation revocation hearing.

We have received an amicus curiae brief from the District Attorney for the 105th Judicial District of Texas. In its preliminary statement, the brief states that the amicus has a special interest in the resolution of this case because of a similar issue now pending before the Thirteenth Court of Appeals in State of Texas v. Priscilla Medina , No. 13-18-00066-CR (notice of appeal filed December 15, 2017, brief filed June 21, 2018). The amicus explains that, in that case, the State has raised a similar challenge to the continued validity of Tarver . We will take note of the arguments raised by the amicus brief in conjunction with those raised by the parties in this case.

In a prior decision, we have acknowledged this lack of clarity with respect to Tarver 's reasoning. See Ex parte Doan, 369 S.W.3d 205, 212 n. 33 (Tex. Crim. App. 2012) ("While Tarver did cite to some federal Supreme Court cases, it is not obvious whether Tarver 's holding was based in Constitutional law or common law[.]"). In Doan , this Court observed that Tarver indicated "basic double jeopardy protections" would not apply to revocation proceedings, before going on to hold that collateral estoppel, which can be based on either constitutional law or common law, would bar Tarver's prosecution under these circumstances. Id. Previous decisions by this Court appear to have taken conflicting views regarding Tarver 's reasoning. Compare Reynolds v. State , 4 S.W.3d 13, 20 & nn. 17 & 18 (Tex. Crim. App. 1999) (indicating that Tarver was decided "as a matter of federal constitutional law" pursuant to double jeopardy principles and applied "federal constitutional collateral estoppel principles under Ashe "), with State v. Brabson , 976 S.W.2d 182, 183 & n. 2 (Tex. Crim. App. 1998) (citing Tarver for proposition that this Court has adopted the "federal common-law doctrine of administrative collateral estoppel," which is separate from the rule of collateral estoppel "as embodied in the Fifth Amendment guarantee against double jeopardy") (citations omitted). Because we address both possible rationales of Tarver in this opinion, we need not resolve this dispute regarding the proper manner of interpreting Tarver .

We note here that, in her dissenting opinion in Ex parte Doan , Presiding Judge Keller wrote extensively in support of the position that this Court overrule Tarver , as we do today, under essentially the same rationale as the one set forth in the instant opinion. See Doan , 369 S.W.3d at 221-23 (Keller, P.J., dissenting) (arguing that Fifth Amendment Double Jeopardy protections do not attach to revocation proceedings).

See also Krochta v. Commonwealth , 429 Mass. 711, 711 N.E.2d 142, 144 (1999) (recognizing that double jeopardy principles are not implicated by a subsequent trial for an offense not proved during a probation revocation proceeding; "A probation revocation proceeding does not put a defendant at any of the[ ] risks" against which the double jeopardy clause protects; "Without a first incidence of jeopardy, the probationer cannot be in 'double' jeopardy at a subsequent criminal trial."); Lucido v. Superior Court , 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223, 1230 (1990) ("A revocation hearing arises as a continuing consequence of the probationer's original conviction; any sanction imposed at the hearing follows from that crime, not from the substance of new criminal allegations against the probationer. Indeed, because the hearing-despite its obvious importance to both probationer and People-neither threatens the probationer with the stigma of a new conviction nor with punishment other than that to which he was already exposed as a result of his earlier offense, it does not place the probationer in jeopardy.").

The Restatement of Judgments provides:
Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
...
(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or ....
(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, ... or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action .
Restatement (Second) of Judgments § 28 (1980) (emphasis added).

See, e.g., Tex. Const . Art. 1, § 10 (detailing extensive rights of accused in criminal prosecutions, including right to a speedy public trial by an impartial jury).

Ex parte Tarver , 725 S.W.2d 195, 200 (Tex. Crim. App. 1986).

Ashe v. Swenson , 397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

Bravo-Fernandez v. United States , --- U.S. ----, 137 S.Ct. 352, 358, 196 L.Ed.2d 242 (2016).

Currier v. Virginia , --- U.S. ----, 138 S.Ct. 2144, 2152, 201 L.Ed.2d 650 (2018).

Id. ; see also U.S. Const. amend VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law.").

Currier , 138 S.Ct. at 2152-53 (citations omitted).

Id. at 2153 (citing Iannelli v. United States , 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975) ).

Ashe , 397 U.S. at 445-46, 90 S.Ct. 1189.