

# NUMBER 13-19-00403-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ADOLFO DE LUNA,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

### On appeal from the 347th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Perkes**

Appellant Adolfo De Luna contends that the trial court abused its discretion by (1)

revoking his community supervision and (2) denying his request for allocution. We affirm.

### I.     BACKGROUND

In 2015, as part of a plea-bargain agreement with the State, De Luna pleaded guilty

to one count of aggravated sexual assault of a child, a first-degree felony, and two counts of indecency with a child by contact, second-degree felonies. *See* TEX. PENAL CODE ANN. §§ 21.11, 22.021. In accordance with the State's recommendation made in exchange for his pleas, the trial court placed De Luna on deferred adjudication community supervision for five years. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.102(a). As a sex offender, De Luna was subject to special conditions of supervision ordered by the trial court, including the successful completion of a sex offender treatment program. *See id.* art. 42A.452.

In 2017, the State filed a motion to revoke De Luna's community supervision. After the State abandoned two of the allegations, De Luna pleaded "true" to the remaining violations, including leaving the county without permission and failing to attend the sex offender treatment program. The trial court accepted an agreed recommendation to retain De Luna on community supervision, place additional conditions on his supervision, and sanction him to thirty days in county jail.

In 2019, the State filed its Second Amended Original Motion to Revoke Probation, alleging forty new violations, including fifteen instances in which De Luna failed to attend the sex offender treatment program. At the hearing, the State abandoned three of the alleged violations. De Luna pleaded "not true" to two of the allegations and pleaded "true"" to the remaining thirty-five violations, including fourteen instances of failing to attend the sex offender treatment program, six instances of leaving the county without permission, two instances of failing to observe curfew, and failing to complete any community service. The trial court accepted De Luna's pleas and found those thirty-five violations to be true.

Although there were two contested allegations, the hearing proceeded largely on the question of whether to retain or revoke De Luna's community supervision, with

testimony from De Luna, his mother, his current and former probation officers, and his counselor from the sex offender treatment program. His current probation officer testified that she was recommending revocation based on persistent compliance issues spanning three years and the seriousness of the underlying crimes. De Luna's former probation officer, who served in that capacity for most of the period in question, explained that De Luna initially had a good attitude after the first motion to revoke. However, De Luna became "distracted" when his parents began suffering from health issues. The officer noted that De Luna was required to drive forty-five minutes to an hour to attend his counseling sessions but often made excuses for why he continually missed sessions. When the trial court asked the officer if he believed De Luna's excuses, he replied, "No, ma'am." When the trial court asked the officer if he found De Luna to be deceptive, he replied, "Yes, your Honor." On cross-examination, the officer agreed that he had no reason to disbelieve De Luna's explanations that he left the county without permission only to take care of his mother or work with his father in a neighboring county.

The sex offender counselor testified that he initially discharged De Luna from the program because De Luna refused to admit his crimes and displayed a poor attitude. The counselor accepted De Luna back into the program after he accepted responsibility, but De Luna's attendance was "sporadic." After the State moved to revoke De Luna for the second time, the counselor described De Luna's attendance and attitude as "excellent" during the intervening eight months before the hearing. Saying he had "seen a change" and "some humility" from De Luna, the counselor believed that De Luna would benefit from continuing in the treatment program, and therefore the counselor recommended that De Luna remain on community supervision. The counselor also stated that research

shows that sending sex offenders to prison increases their chances of reoffending upon release. Although he believed De Luna's progress was genuine, the counselor agreed that "[De Luna] could be pulling the wool over our eyes" and that De Luna's recent attendance was largely motivated by the pending revocation hearing. Regardless of De Luna's motivations, the counselor reiterated that De Luna had made substantive progress. Finally, when asked whether De Luna would revert to his previous behavior once the threat of prison was removed, the counselor responded, "We don't [know]."

De Luna's mother testified that due to her health problems, including cancer and a fall that prevented her from walking for six months, De Luna had been providing her with daily care. She testified that De Luna also provided care for her husband who is disabled. She said that De Luna had been living with them for the past year and a half in Kleberg County, sleeping there each night. She also testified that De Luna had resided in Brooks County at some point but could not recall the exact time period.

De Luna testified that, on occasion, he left Brooks County without permission to provide care for his parents, but he denied that he resided in Kleberg County without first obtaining permission from the probation department. De Luna attributed his absences from the treatment program to his care provider responsibilities, as well as two car accidents that required him to take prescribed pain medication and resulted in the total loss of his vehicle. De Luna stated that those issues have now been resolved. He agreed with his counselor that he was making progress in treatment, saying "I feel like I have changed." He explained that he has accepted responsibility for his crimes and now places other people's interests above his own. On cross-examination, after the State questioned his timeline, De Luna retracted his prior statement that his car accidents contributed to

4

his absences. Instead, he insisted that he was attending to his mother on each occasion.

After both sides rested, the trial court announced that it was finding the two challenged allegations untrue and then said, "I realize that I have taken in all the testimony unless you have more testimony on punishment. We kind of combined the two." De Luna's counsel responded, "That's correct." The trial court then announced that it was taking judicial notice of the entire testimony for purposes of punishment and both sides announced that they were resting on punishment.

After each side closed, the following exchange occurred between the trial court and De Luna:

| THE COURT: | Because the crime is horrific and because you were given an opportunity, you have to do everything perfect. So[,] you come strolling in here on a first motion to revoke your probation. At that time the allegations were that you did not go to your treatment sessions. Once again, you were not where you were suppose[d] to be. But most troublesome for the court is that you were not attending your treatment. The State came to me with the defense and said we are going to give him another opportunity. We are going to give him 30 days Nueces County jail as a sanction. I went along with that. I am sure I admonished you at that time to get back on track, make sure you don't miss any treatment sessions. You did not do what you were suppose[d] to do. |
| --- | --- |
| | Mr. DeLuna, I feel bad for your mom although she kind of enabled it. |
| DE LUNA: | Can I speak? |
| THE COURT: | Nope. At this time, I am going to sentence you . . . . |

The trial court then revoked De Luna's community supervision, adjudicated him guilty, and sentenced him to twenty-year concurrent sentences on each of the three counts. This appeal followed.

5

## II.     REVOCATION

By his first issue, De Luna argues that the trial court abused its discretion in revoking his community supervision.

### A.     Standard of Review

We review a trial court's decision to revoke community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). In a revocation proceeding, it is the State's burden to prove by a preponderance of the evidence that a probationer violated the terms of his community supervision. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). A trial court abuses its discretion when it revokes community supervision after the State has failed to meet its burden of proof. *Cardona*, 665 S.W.2d at 493–94.

Proof by a preponderance of the evidence of any one of the alleged violations of the conditions of community supervision will support revocation on appeal. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980). A plea of true, standing alone, constitutes proof by a preponderance of the evidence. *See Jones v. State*, 112 S.W.3d 266, 268 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) (citing *Cole v. State*, 578 S.W.2d 127, 128 (Tex. Crim. App. [Panel Op.] 1979)). The trial judge is the sole judge of the credibility of the witnesses and the weight given to their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981).

### B.     Analysis

De Luna does not dispute that the State carried its burden; he pleaded "true" to

thirty-five violations. *See Jones*, 112 S.W.3d at 268 (citing *Cole*, 578 S.W.2d at 128). Instead, he points to his progress in the treatment program and contends that continuing, rather than revoking, his community supervision is more consistent with the goals of community supervision because completing the program would decrease his chances of reoffending. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.301(a) ("The judge may impose any reasonable condition . . . designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant."). Thus, De Luna reasons that the trial court abused its discretion by failing to correctly apply the law to the facts.[1]

De Luna assumes that he conclusively established that his progress and continued commitment to treatment were sincere. His motivations, however, were hotly contested. As the trier of fact, the trial court was tasked with weighing De Luna's credibility and forecasting his future adherence to the conditions of his supervision. *See State v. Waters*, 560 S.W.3d 651, 659 (Tex. Crim. App. 2018) (explaining that "in a revocation proceeding, the central question is whether the probationer has violated the terms of [his] community supervision and whether [he] remains a good candidate for supervision"); *Cardona*, 665 S.W.2d at 493. After De Luna pleaded "true" to thirty-five violations, the trial determined that De Luna was no longer a good candidate for community supervision, and it is not our place to disturb that determination. *See Flournoy v. State*, 589 S.W.2d 705, 708 (Tex. Crim. App. [Panel Op.] 1979) (explaining that once a violation is established, "the discretion of the trial court to choose the alternative of revocation is at least substantially

---

[1] De Luna acknowledges in his brief that "he has found no cases in which a court of appeals stated a trial court must allow an Appellant to remain on community supervision despite violations of conditions on the basis that he was making progress in sex offender therapy."

7

absolute."). We overrule De Luna's first issue.

### III.     ALLOCUTION

By his second issue, De Luna complains that the trial court violated his common-law right of allocution when it denied his request to speak before pronouncing his sentence. The common-law right of allocution refers to a defendant's ability to personally address the trial court in mitigation of punishment. *Eisen v. State*, 40 S.W.3d 628, 631–32 (Tex. App.—Waco 2001, pet ref'd) (quoting A DICTIONARY OF MODERN LEGAL USAGE 45 (Bryan A. Garner ed., 2nd ed., Oxford 1995)). The State argues, and we agree, that De Luna failed to preserve this issue for appeal.[2]

To preserve error for appeal, a party is required to make a timely request, objection, or motion to the trial court and obtain an express or implied ruling. TEX. R. APP. P. 33.1. This means that De Luna was required to clearly convey to the trial court the particular complaint he now raises on appeal, including "the precise and proper application of the law as well as the underling rationale." *Pena v. State*, 285 S.W.3d 459, 463–64 (Tex. Crim. App. 2009). To avoid forfeiting an appellate complaint, the complaining party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Id.* at 464 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

Although De Luna generally asked, "Can I speak?" before the trial court revoked

---

[2] The State also argues that the common-law right to allocution has been abrogated by Article 42.07 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 42.07 (requiring the trial court to ask whether there is any reason why sentence should not be pronounced against the defendant and limiting such reasons to issuance of a pardon, incompetency, and mistaken identity). We need not address that issue here. *See* TEX. R. APP. P. 47.1.

his probation, adjudicated him guilty, and pronounced his sentence, neither he nor his counsel clearly conveyed to the trial court a request that De Luna be allowed to exercise his alleged common-law right of allocution or an objection that the trial court was violating this alleged right. *See Norton v. State*, 434 S.W.3d 676, 771 (Tex. App.—Houston [14th Dist. 2014, no pet.) (concluding that defendant's request, "Can I talk to you?" before the trial court revoked her probation and pronounced her sentence failed to preserve alleged error based on common-law right of allocution). Having determined that De Luna failed to preserve this alleged error, we overrule his second issue. *See* TEX. R. APP. P. 33.1.

## IV. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of November, 2020.

9