

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00400-CR

Stephon **MOODY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR12926
Honorable Melisa C. Skinner, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Irene Rios, Justice
                Beth Watkins, Justice

Delivered and Filed: December 7, 2022

AFFIRMED

Appellant Stephon Moody appeals his community supervision revocation. As part of his community supervision conditions, Moody was ordered not to contact the victim from his underlying offense. After Moody was ordered to pay restitution, he drove to the victim's house, passing it several times and stopping for two to three minutes, as the victim watched from the window. The trial court concluded that this action met the definition of contact. Moody argues that it did not.

## BACKGROUND

Appellant Stephon Moody pleaded guilty to deadly conduct with a firearm after he drove to the victim's home and shot out two rear windows of her car. One of his shots went into the victim's home. Moody was sentenced to six years in prison, but his sentence was suspended in favor of deferred adjudication and community supervision. One condition of his deferred adjudication was that he not contact the victim. The condition stated:

> You will neither contact nor attempt to contact [the victim] nor any of his/her family members in person, verbally, telephonically, in writing or in any other manner, and should you find yourself inadvertently in contact with said individual, you will immediately leave and not threaten, assault, or verbally abuse him/her as directed by the Court and/or Bexar County Community Supervision and Corrections Department (CSCD).

Following Moody's sentencing, the trial court held a restitution hearing to determine the amount of money required to repair the victim's car and ordered Moody to pay it. On that same day, after the restitution hearing, Moody drove to the victim's house. The victim saw Moody drive by outside. After he passed the victim's home, he returned and stopped for two to three minutes before driving away again. Then he returned and passed by again.

The State moved to revoke Moody's community supervision, citing 1) a violation of Moody's no-contact order based on the victim's report, and 2) a terroristic threat made by telephone call from the jail. Regarding the terroristic threat allegation, the State was unable to call the jail's custodian of records as a witness at Moody's violation hearing and was precluded from introducing evidence of the threatening jail call as a result. But the victim of Moody's shooting offense was present and testified that she saw Moody drive past her home several times. She stated that it terrified her, that it caused her to lose sleep, and that she worried about Moody waiting outside her home for her.

Moody argued that driving past the victim's home did not fit the common definition for "contact." The State argued that Moody was indirectly contacting the victim and scaring her. The trial court noted that Moody had been "extremely angry about the restitution hearing and about the restitution amount." The trial court concluded that Moody violated his no-contact order and that his community supervision should be revoked. Moody was convicted and sent to prison for his six-year sentence. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's decision to revoke a defendant's community supervision for an abuse of discretion. *See State v. Waters*, 560 S.W.3d 651, 661 (Tex. Crim. App. 2018) ("[A] trial judge has broad discretion in ruling on a revocation motion."); *Beltran v. State*, No. 04-14-00323-CR, 2015 WL 4273280, at *3 (Tex. App.—San Antonio July 15, 2015, no pet.) (mem. op., not designated for publication) (citing *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006)). "[W]hen there is factually sufficient evidence to support a finding that a condition of probation has been violated the trial court does not abuse his discretion in revoking probation." *Reynolds v. State*, 746 S.W.2d 536, 538 (Tex. App.—Texarkana 1988, no pet.) (citing *Cardona v. State*, 665 S.W.2d 492 (Tex. Crim. App. 1984)). "Proof by a preponderance of the evidence that a probationer violated one of the conditions of his probation is sufficient to justify the court in revoking such probation." *Id*. (citing *Anderson v. State*, 621 S.W.2d 805 (Tex. Crim. App. 1981)). This includes "direct and circumstantial evidence, along with reasonable inferences." *Gradney v. State*, No. 14-13-01107-CR, 2015 WL 971167, at *2 (Tex. App.—Houston [14th Dist.] Mar. 3, 2015, no pet.) (mem. op.) (citing *Joseph v. State*, 3 S.W.3d 627, 640 (Tex. App.—Houston [14th Dist.] 1999, no pet.)). "The reviewing court examines the record in the light most favorable to the judge's ruling to determine whether the State established by a preponderance of the evidence that the defendant violated the terms and conditions of probation as alleged." *Becker v. State*, 33

S.W.3d 64, 66–67 (Tex. App.—El Paso 2000, no pet.) (citing *Jackson v. State*, 645 S.W.2d 303, 304 (Tex. Crim. App. 1983); *Johnson v. State*, 2 S.W.3d 685, 686 (Tex. App.—Fort Worth 1999, no pet.); *Greer v. State*, 999 S.W.2d 484, 486 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd)). "If there is some evidence to support the finding of even a single violation, the order must be upheld." *Id*. (citing *Cardona*, 665 S.W.2d at 493–94; *O'Neal v. State*, 623 S.W.2d 660, 661 (Tex. Crim. App. 1981)).

### VIOLATING "NO CONTACT" CONDITION OF DEFERRED ADJUDICATION

#### A. Parties' Arguments

Moody argues that he did not contact the victim in violation of his community supervision conditions when he drove by the victim's home repeatedly after their restitution hearing. The State argues that the trial court acted within its discretion in revoking Moody's community supervision.

#### B. Law

In the context of no-contact orders, neither the Texas Penal Code nor the Texas Code of Criminal Procedure provides a definition for "contact." *See, e.g.,* TEX. PEN. CODE ANN. § 1.07; TEX. CODE CRIM. PROC. ANN. art. 3.01; *accord Beltran*, 2015 WL 4273280, at *3. "[W]ords not specifically defined by the Legislature are to be understood as ordinary usage allows…." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995) (quoting *Vernon v. State*, 841 S.W.2d 407 (Tex. Crim. App. 1992)); *accord* TEX. CODE CRIM. PROC. ANN. art. 3.01; *Beltran*, 2015 WL 4273280, at *3.

As noted by Moody, this court in a similar case read "contact" to mean "be in or establish communication with." *Beltran*, 2015 WL 4273280, at *3. In *Beltran v. State*, the appellant-defendant saw his ex-wife and her boyfriend drive past him, made a U-turn, drove erratically to make up the distance, and then followed them until they pulled over. *Id*. at *1–3. Beltran drove slowly past them with his window down, gesturing at the couple with his middle finger before

driving off. *Id*. at *1. This court concluded that Beltran's obscene gesture toward his ex-wife and her boyfriend was evidence of an actual communication in violation of Beltran's no-contact order. *Id*. at *3. Moody then distinguishes Beltran by arguing that this case lacks the obscene gesture.

The State has cited Dictionary.com, which defines contact (verb) as: 1) "to put or bring into contact," 2) "to communicate with." *Contact*, Dictionary.com, (last visited March 25, 2022). The State then argues that because Dictionary.com defines contact (noun), in one of eight entries, as "immediate proximity or association," we should therefore construe contact to mean "to put or bring into immediate proximity," meaning that Moody contacted the victim by bringing himself into her immediate proximity.

**C.     Analysis**

There is no question that Moody drove to the victim's home after he was ordered to pay her restitution, that he drove by repeatedly, and that he stopped in front of the home for two to three minutes. There is also no question that the last documented time Moody drove by the victim's home, he shot out two of her car windows and into her home. His actions need not be interpreted in a vacuum. *See Gradney*, 2015 WL 971167, at *2. Moody's presence at the victim's home sent a message that reasonably made the victim feel fearful. Whether or not we interpret this action as Moody contacting the victim by bringing himself into her immediate proximity, we can also say that doing so repeatedly constitutes a communication or an attempted communication. *See id*. In viewing the evidence in the light most favorable to upholding the trial court's judgment, we do not conclude that the trial court abused its discretion in revoking Moody's community supervision. *See Becker*, 33 S.W.3d at 66–67. Moody's sole issue on appeal is overruled.

## CONCLUSION

Based on the direct and circumstantial evidence, along with reasonable inferences, we conclude that the trial court did not abuse its discretion by revoking Moody's community supervision.  We affirm the trial court's judgment.

Patricia O. Alvarez, Justice

DO NOT PUBLISH